IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAY KRUISE,** | : | Civ. No. 3:21-CV-543 |
| | : | |
| Plaintiff, | : | (Judge Saporito) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| | : | |
| **U.S. DEP'T OF ARMY, et al.,** | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM AND ORDER

### I. Factual and Procedural Background

This workplace disability discrimination case comes before us for resolution of a series of motions to compel. (Docs. 138, 142, 144, 146, 153). With respect to these discovery disputes, as this Court has previously explained: "Jay Kruise ('Plaintiff') initiated this employment discrimination action against the United States Department of the Army and its Secretary, alleging that his March 2019 termination was the result of racial and disability-based discrimination, and that he was subjected to a hostile work environment." (Doc. 97 at 1).

As part of the ongoing and occasionally contentious discovery in this case, Kruise has filed this series of motions seeking the following additional items of discovery: (1) an audible copy of a recording of a police call; (2) "the complete Human Resources Report of Investigation (ROI) conducted between December 12

1

and December 17, 2018;" (3) supplemental responses to Interrogatories Nos. 14 and 15 that were previously propounded by the plaintiff; and (4) production of any reports of investigation into various allegations which Kruise leveled against co-workers. (Docs. 138, 142, 144, 146, 153).

The defendant has responded to these motions by producing, in an electronic format, approximately 2,474 pages of material, including the telephone call requested by Kruise; by supplementing its prior discovery responses to add greater clarity to those responses; and by confirming that no reports of investigation exist beyond those materials produced by the defendant. (Doc. 164).

Dissatisfied with this response, Kruise has filed a reply brief which requests that we order the defendant to take three specific steps; namely:

    1. Produce the complete Human Resources Report of Investigation regarding the events leading to Plaintiff's removal;

    2. Produce all responsive documents and audio recordings on a CD-ROM or via secure email link at its own expense; and

    3. Produce the complete investigative files related to Plaintiff's harassment complaints filed in 2018, or, in the alternative, certify under oath that no investigations were conducted.

(Doc. 168).

Thus, Kruise's motions to compel are fully briefed and are ripe for resolution. Upon consideration of the parties' positions, for the reasons set forth below, we will

DENY these motions in light of the supplemental discovery responses recently provided by the defendant.

## II.  Discussion

The parties' discovery disputes are judged against familiar legal guideposts. As we have observed when addressing similar discovery issues:

> Rulings regarding the proper scope of discovery are matters consigned to the court's discretion and judgment. A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of abuse of that discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion also extends to rulings by United States Magistrate Judges on discovery matters. In this regard:
>
>> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter ..., "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing Scott Paper Co. v. United States, 943 F. Supp. 501, 502 (E.D. Pa. 1996)). Under the standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 2735702, at *1 (D.N.J. Sept. 27, 2010).

The exercise of this discretion is guided, however, by certain basic principles. At the outset, Rule 26(b) of the Federal Rules of Civil Procedure generally defines the scope of discovery permitted in a civil action, prescribes certain limits to that discovery and provides as follows:

> (b) Discovery Scope and Limits.
>
> (1) *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b).

Thus, our discretion is limited in a number of significant ways by the scope of Rule 26 itself, which provides for discovery of only "nonprivileged matter that is relevant to any party's claim or defense." Therefore, "[t]he Court's discretion in ruling on discovery issues is, therefore, restricted to valid claims of relevance and privilege." Robinson v. Folino, No. 14-227, 2016 WL 4678340, at *2 (citing Jackson v. Beard, No. 11-1431, 2014 WL 3868228, at *5 (M.D. Pa. Aug. 6, 2014) ("[a]lthough the scope of relevance in discovery is far broader than that allowed for evidentiary purposes, it is not without its limits.... Courts will not permit discovery where a request is made in bad faith, unduly burdensome, irrelevant to the general subject matter of the action, or relates to confidential or privileged information")).

Accordingly, at the outset it is clear that Rule 26's definition of that which can be obtained through discovery reaches any nonprivileged matter that is relevant to any party's claim or defense, and valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all relevant information, a concept which is not confined to admissible evidence but is also defined in the following terms: "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Rather, Rule 26 states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." This concept of relevance is tempered, however, by principles of proportionality. Thus we are now enjoined to also consider whether the specific discovery sought is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Thus, it has been said that the amended rule 'restores the proportionality factors to their original place in defining the scope of discovery.' " Fassett v. Sears Holdings Corp., 319 F.R.D. 143, 150 (M.D. Pa. 2017) (quoting Wertz v. GEA Heat Exchangers Inc., No. 1:14-CV-1991, 2015 WL 8959408, at *2 (M.D. Pa. Dec. 16, 2015)).

Lawson v. Love's Travel Stops & Country Stores, Inc., No. 1:17-CV-1266, 2020 WL 109654, at *2–3 (M.D. Pa. Jan. 9, 2020).

Further:

One other immutable factor governs the scope of discovery under Rule 26.

> "It is an obvious truism that a court should not enter an order compelling a party to produce documents where the documents do not exist." Wells v. JPC Equestrian, Inc., No. 3:13-CV-2575, 2014 WL 5641305, at *4 (M.D. Pa. Nov. 4, 2014). It is clear, therefore, that the court cannot compel the production of things that do not exist. Nor can

5

> the court compel the creation of evidence by parties who attest that they do not possess the materials sought by an adversary in litigation. See, e.g., AFSCME District Council 47 Health and Welfare Fund v. Ortho-McNeil-Janssen Pharmaceuticals, Inc., No. 08-5904, 2010 WL 5186088 (E.D. Pa. Dec. 21, 2010); Knauss v. Shannon, No. 08-1698, 2009 WL 975251 (M.D. Pa. April 9, 2009). See Lawson v. Love's Travel Stops & Country Stores, Inc., No. 1:17-CV-1266, 2019 WL 5622453, at *4 (M.D. Pa. Oct. 31, 2019).

Lopez v. Wetzel, No. 3:21-CV-1819, 2024 WL 2055041, at *4 (M.D. Pa. May 6, 2024).

A party moving to compel discovery bears the initial burden of proving the relevance of the requested information. Morrison v. Philadelphia Housing Auth., 203 F.R.D. 195, 196 (E.D. Pa. 2001). Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D. Kan. 2009).

Applying these legal tenets, we turn first to Kruise's requests that the defendant: (1) Produce the complete Human Resources Report of Investigation regarding the events leading to plaintiff's removal; and (2) produce the complete

6

investigative files related to plaintiff's harassment complaints filed in 2018, or, in the alternative, certify under oath that no investigations were conducted.

With respect to these two requests, as we understand the defendant's response, the defense has produced all of the responsive information in its possession, and the defense denies that any further reports of investigation or investigative files exist. Since "a court should not enter an order compelling a party to produce documents where the documents do not exist," Wells v. JPC Equestrian, Inc., No. 3:13-CV-2575, 2014 WL 5641305, at *4 (M.D. Pa. Nov. 4, 2014), we will remind the defendant of its ongoing duty to supplement discovery but will DENY Kruise's efforts to compel production of things which the defendant avers do not exist.

Finally, we note that Kruise objects to the format of this Defendant's discovery disclosure through a USB drive, stating:

> Plaintiff objects to this method of production and asserts that the USB drive is unusable. In this era of heightened cybersecurity threats, order Defendant to produce all documents and audio files in a safe and accessible format. Production should be made on a CD-ROM, a read-only medium that significantly mitigates security risks, and sent to Plaintiff's address on record. Alternatively, Defendant should be ordered to produce the files via email, consistent with its past practice. unsolicited and unverified USB drive into a personal computer is an unacceptable security risk. The drive could easily contain malicious software (malware, spyware, or a virus) designed to damage Plaintiff's computer, compromise his personal data, or grant Defendant unauthorized access to his files and communications.

(Doc. 168 at 4).

Therefore, Kruise requests that we:

7

> [O]rder Defendant to produce all documents and audio files in a safe and accessible format. Production should be made on a CD-ROM, a read-only medium that significantly mitigates security risks, and sent to Plaintiff's address on record. Alternatively, Defendant should be ordered to produce the files via email, consistent with its past practice.

(Id. at 5).

While we certainly have no objection to the parties arranging some mutually convenient and agreeable manner of transmitting this discovery information, we recognize that the use of USB drives as a medium for delivery of voluminous discovery is fairly commonplace. See Murphy v. Precision Castparts Corp., No. 3:16-CV-00521-SB, 2021 WL 4524153, at *7 (D. Or. Oct. 4, 2021). Further, we are confident that the Defendant would not utilize this discovery medium to install "malicious software designed to damage Plaintiff's computer, compromise his personal data, or grant Defendant unauthorized access to his files and communications," as feared by Kruise. Therefore, we will decline Kruise's invitation to dictate the precise means by which the Defendant produces this information while urging the parties to cooperate in ensuring the plaintiff's receipt of this data in a useable format.

An appropriate order follows.

/s/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge

DATED: December 11, 2025

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAY KRUISE, | : | Civ. No. 3:21-CV-543 |
| | : | |
| Plaintiff, | : | (Judge Saporito) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| | : | |
| U.S. DEP'T OF ARMY, et al., | : | |
| | : | |
| Defendants. | : | |

## ORDER

AND NOW, this 11th day of December 2025, in accordance with the accompanying Memorandum, IT IS ORDERED that the plaintiff's motions to compel (Docs. 138, 142, 144, 146, 153) are DENIED.

/s/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge